MALJAK *v.* MURPHY

OPINION OF THE COURT

1. ATTORNEY AND CLIENT—COURTS—SUMMARY JURISDICTION—PARTIES.

Summary jurisdiction of a court at common law, in matters of the attorney-client relationship, extends to those cases in which an attorney has received from his client monies which duty requires him to repay and the fact that summary proceeding to recover those monies is later invoked by a successor in interest to the client will not deprive a court of jurisdiction.

REFERENCES FOR POINTS IN HEADNOTES
[1–7] 7 Am Jur 2d, Attorneys at Law §§ 191–195.
[6] 17 Am Jur 2d, Contempt §§ 105, 106, 109–112.

2. ATTORNEY AND CLIENT—COURTS—SUMMARY JURISDICTION—PARTIES—COURT RULE.

A party who succeeds to the rights of a client, given the existence of the attorney-client relationship, may invoke a court's jurisdiction under the court rule providing that attorneys are officers of the courts of Michigan, subject to the summary jurisdiction of such courts, and a circuit court of the county in which the attorney resides or has an office, on verified written complaint of any client, has jurisdiction to make any order for the payment of money or for the performance of any act by the attorney which law and justice may require (GCR 1963, 908).

3. ATTORNEY AND CLIENT—COURTS—SUMMARY PROCEEDINGS—PARTIES—ADMINISTRATORS OF ESTATES—JURISDICTION—COURT RULE.

Circuit court had jurisdiction to enforce payment by an attorney of monies he had received from his client in summary proceedings, pursuant to a court rule, upon petition by the administrator of the estate of the client, since the requisite relationship of attorney-client existed where the money had been paid to the attorney in his professional capacity in representing his client (GCR 1963, 908).

4. ATTORNEY AND CLIENT—COURTS—JURISDICTION—COURT RULE—ATTORNEY'S MISCONDUCT—JUDGMENTS.

Jurisdiction, under the court rule providing that attorneys are officers of the courts of Michigan, subject to the summary jurisdiction of such courts, and a circuit court of the county in which the attorney resides or has an office, on verified written complaint of any client, has jurisdiction to make any order for the payment of money or for the performance of any act by the attorney which law and justice may require, would not be lost by recovery of a judgment against the attorney, as the fact that the client has obtained a judgment on his claim in a plenary suit does not purge the attorney of his misconduct nor deprive the court of remedies provided in the court rule (GCR 1963, 908).

5. ATTORNEY AND CLIENT—COURTS—SUMMARY PROCEEDINGS—COURT RULE.

The summary procedure available at common law and recognized in the court rule providing that attorneys are officers of the courts of Michigan, subject to the summary jurisdiction of such courts, and a circuit court of the county in which the attorney resides or has an office, on verified written complaint

of any client, has jurisdiction to make any order for the payment of money or for the performance of any act by the attorney which law and justice may require is not an exclusive remedy and it is thus apparent that an institution of a plenary suit by the administrator of the estate of a deceased client of the attorney does not render unavailable the proceedings authorized by that court rule (GCR 1963, 908).

6. CONSTITUTIONAL LAW—IMPRISONMENT FOR DEBT—CONTEMPT.

Order of a court committing an attorney to jail for failure to obey an order of that court compelling him to pay a certain sum does not violate the constitutional prohibition of imprisonment for debt as the attorney was found to be in violation of a direct order of that court which had the power to order his imprisonment to coerce compliance with its order and this was in no way dependent on contract (Const 1963, art 1, § 21).

DISSENTING OPINION

T. G. KAVANAGH and SWAINSON, JJ.

7. ATTORNEY AND CLIENT—CONTRACTS—JUDGMENTS—CONTEMPT.

*An attorney should not be jailed for contempt because of his failure to pay a judgment on a simple contract action.*

Appeal from Court of Appeals, Division 1, Lesinski, C. J., and Levin and Danhof, JJ., affirming Wayne, Richard Robinson, J. Submitted April 6, 1971. (No. 1 April Term 1971, Docket No. 52,841.) Decided July 7, 1971.

22 Mich App 380 affirmed.

Complaint by Joseph Begovich, administrator of the estate of Nicholas Begovich, against Neil F. Murphy for refund of sums paid in advance on attorney's fees. Judgment for plaintiff. In supplementary proceedings instituted by plaintiff for discovery of defendant's assets, defendant held in contempt of court for failure to obey an order to make monthly payments on the judgment. Doris

Maljak, Katherine Dubois, Lucy Trusk, Margaret Tarin, and Helen Grimes were substituted as parties plaintiff after the death of Joseph Begovich. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Affirmed.

*Harold Goodman,* for plaintiffs.

*Charles Burke,* for defendant.

T. E. BRENNAN, J.

## THE CASE

In 1958 one Nicholas Begovich was arrested and charged with the crime of murder. While in custody he retained the services of defendant, Neil F. Murphy, an attorney licensed to practice in the State of Michigan. Defendant agreed to represent Nicholas Begovich for a fee of $10,000. Defendant initially received $2,500 and subsequently another $4,000 making a $6,500 advance on the fee. Prior to his trial Nicholas Begovich committed suicide.

On August 21, 1958 Joseph Begovich, administrator of the estate of Nicholas Begovich, instituted a proceeding against the defendant in Wayne County Circuit Court under Court Rule No 4 (1945) now GCR 1963, 908. This action was dismissed by the circuit judge on March 9, 1959, the court ruling that the summary jurisdiction of Rule No 4 applied only to controversies between attorneys and clients and did not survive to the administrator. The administrator had contended that the $6,500 advance by Nicholas Begovich had not been earned and sought recovery in the amount of $4,000. On March 10, 1959 Joseph Begovich as administrator commenced a common-law action in assumpsit against the defendant in the Wayne County Circuit Court

for $4,000. This action was dismissed on motion by the trial court, on the ground that the deceased had entered into a contract to pay the defendant $10,000 to represent him at trial. The trial court reasoned that by committing suicide the deceased had breached his express contract, and therefore, the administrator was barred from recovery. This Court in *Begovich* v. *Murphy* (1960), 359 Mich 156, reversed, finding that the lower court record did not support the finding of an express contract, but rather that plaintiff's declaration sought repayment of funds advanced on an implied contract. On February 1, 1963 trial resulted in a verdict for the plaintiff-administrator in the amount of $4,000.

On October 9, 1963 plaintiff-administrator instituted supplementary proceedings in Wayne County Circuit Court seeking discovery of defendant's assets and to enjoin defendant from transferring or disposing of any property. On December 24, 1963, the circuit judge ordered the defendant to maintain a set of books and accounts and granted the injunction. On February 23, 1964, Joseph Begovich died, and present parties are the real parties in interest.

On February 16, 1967,[1] plaintiffs moved to enforce payment by the filing of a motion in circuit court asking (a) that an order enter under GCR 1963, 908 requiring payment by the defendant of the amount of verdict, (b) that an order enter for a writ of execution against properties of the defendant.

On September 26, 1967 an order was entered under GCR 1963, 908 compelling defendant to pay

---

[1] On August 6, 1965 the circuit judge had entered an order finding the defendant in contempt of court for failure to produce books and records as ordered and sentenced him to 30 days confinement in Wayne County jail. Defendant appealed this contempt order, and on February 4, 1966 the Court of Appeals entered an order setting aside the contempt order because personal service had not been made on defendant.

plaintiffs the sum of $4,000 payable at the rate of $200 per month.[2]

On February 7, 1969 a petition to show cause why the defendant should not be held in contempt of court was filed in circuit court, and on February 18, 1969 a hearing on this petition was held at which time the defendant was found to be in contempt of court for failure to obey the order of September 26, 1967, and was ordered committed to the Wayne County jail for a period of 90 days.

The Court of Appeals affirmed[3] the order of commitment, reasoning that defendant was subject to the provisions of GCR 1963, 908. We granted leave to appeal[4] to consider the jurisdictional range of GCR 1963, 908.

## DISCUSSION

Defendant's principal contention is that the circuit court had no jurisdiction to compel payment under threat of contempt pursuant to the provisions of GCR 1963, 908,[5] since the relationship between the administrator and defendant was not the necessary attorney-client relationship contemplated by

---

[2] Defendant appealed the order of September 26, 1967, to the Court of Appeals being in Joseph Begovich, as administrator of estate of *Nicholas Begovich* v. *Neil F. Murphy*, Docket No 4,515. On July 5, 1968 the Court of Appeals entered an order dismissing the appeal because of defendant's failure to order the transcript and file his brief as required by the court rule, and further ordered the defendant to pay to the plaintiff the sum of $400 court costs and punitive damages.

[3] 22 Mich App 380.

[4] 383 Mich 796.

[5] GCR 1963, 908: "Attorneys and counselors are officers of the courts of this State and as such are subject to the summary jurisdiction of such courts. The circuit court of the county in which an attorney resides or has an office has jurisdiction, on verified written complaint of any client, either in person or by attorney and after reasonable notice and hearing, to make any order for the payment of money or for the performance of any act by the attorney which law and justice may require. All courts of record have a like jurisdiction as to all such complaints regarding matters arising in suits or proceedings in such courts."

that rule. A short look at the historical framework in which the rule was adopted as well as its evident purpose confirms our conclusion that defendant was jurisdictionally subject to the Rule 908 remedy.

GCR 1963, 908 was first adopted in the revision of 1931 as Rule 4. It was originally enacted as being, in substance, " * * * a recognition of the common law right of the courts to exercise control over attorneys in their capacity as officers of the court."[6] Since the common-law procedure was exercised only in cases of professional misconduct, the rule has been " * * * deemed to cover only situations of overreaching on the part of an attorney as against his client * * * ."[7]

It is, then, against the backdrop of common-law procedure that the requisite attorney-client relationship must be considered. The teaching of the common law here is clear: The summary jurisdiction of the court in such matters extends to those cases in which an attorney has received from his client monies which duty requires him to repay. The fact that the summary proceeding is later invoked by a successor in interest to the client will not deprive a court of jurisdiction. *In the matter of the Executors of Aitkin* (1820), 4 B & Ald 47, exemplified the common-law procedure recognized in GCR 1963, 908. The petitioner was the executor of the client, but the court held that it had jurisdiction over summary proceedings:

"Abbott C. J. The question in this case is, whether this Court will compel an attorney to do that which in justice he ought to do. Now the rule by which the Court are to be governed in exercising this summary jurisdiction over its officers seems to

---

[6] Author's Comment to Court Rule No 4 (1945).
[7] *Id.*

me to be this; where an attorney is employed in a matter wholly unconnected with his professional character, the Court will not interfere in a summary way to compel him to execute faithfully the trust reposed in him. But where the employment is so connected with his professional character as to afford a presumption that his character formed the ground of his employment by the client, there the Court will exercise this jurisdiction. * * * I am of opinion that the facts in this case bring it within this rule, and that the rule ought to be made absolute."[8]

Thus, given the existence of the attorney-client relationship, a party who succeeds to the rights of the client may invoke the court's jurisdiction under GCR 1963, 908. In the instant case, it is beyond dispute that the amount of $6,500 was paid to defendant in his professional capacity in representing Nicholas Begovich. Since the requisite relationship existed, the circuit court had jurisdiction to enforce payment by an attorney in summary proceedings upon petition by the administrator of the estate of the client.

Nor would jurisdiction under GCR 1963, 908 be lost by recovery of judgment. The fact that the client has obtained a judgment on his claim in a plenary suit does not purge the attorney of his misconduct nor deprive the court of the remedies provided in GCR 1963, 908. While defendant is undoubtedly correct in asserting that the recovery of the judgment created a debtor-creditor relationship, and that ordinarily the contempt powers of the court may not be used to collect sums of money which are collectible by execution,[9] our court rule sets forth a supplementary remedy where an attorney-client relationship exists.

---

[8] See e.g., In re Klein (1906), 101 NYS 663 (trustee in bankruptcy); Sherman v. Yankee Products Corporation (1922), 201 App Div 647 (194 NYS 705) (subrogee); Schell v. The Mayor (1891), 128 NY 67 (27 NE 957) (voluntary assignee).

[9] MCLA § 600.1701(5) (Stat Ann 1962 Rev § 27A.1701[5]).

The summary procedure available at common law and recognized in GCR 1963, 908 is not an exclusive remedy[10] and it is thus apparent that institution of a plenary suit does not render unavailable the proceedings authorized by GCR 1963, 908.

Defendant also contends that the order of commitment violates the constitutional prohibition of imprisonment for debt.[11] The defendant was found to be in violation of a direct order of the circuit court. That court had the power to order the imprisonment of the defendant to coerce compliance with its order, and this was in no way dependent on contract. *White* v. *Wadhams* (1920), 211 Mich 658.

Affirmed. Costs to plaintiffs.

T. M. KAVANAGH, C. J., and BLACK, ADAMS and WILLIAMS, JJ., concurred with T. E. BRENNAN, J.


SWAINSON, J. (*dissenting*). It is imperative to remember precisely what is involved in this case. We are not dealing with a situation where an attorney was paid a retainer and failed to provide any services for his client. The defendant Murphy, after being paid the $6,500 advance, was able to have the charge against Nicholas Begovich reduced from first-degee murder to second-degree murder. In addition, he successfully secured the release of Mr. Begovich on bail. Thus, a *bona fide* dispute arose between the attorney and the client over the worth of the services.

---

[10] See syllabus, *In re Grey* (1892), 29 QB Div 440, in which the court held as follows: "Where a solicitor has committed a breach of professional duty in failing to pay over money received by him for his client, the fact that the client has brought an action against him and recovered judgment for the money does not take away the disciplinary jurisdiction of the Court summarily to order payment of the money to the client."

[11] Const 1963, art 1, § 21.

The majority opinion has failed to cite any case in support of the theory that an attorney may be jailed for contempt because of a failure to pay a judgment on a simple contract action. The reason is that this is a novel assertion and there is no case that so holds. The cases which are cited by the majority are clearly distinguishable on their facts. All of these cases involve some form of fiduciary relationship where the attorney was acting in a special capacity. We agree that if this case had involved the transfer of specific funds or property held by the attorney as a trustee for another person, then the failure to turn over these funds could be enforced by contempt. See, for example, *Smith* v. *Lapeer Circuit Judge* (1930), 251 Mich 126, and *Burnett* v. *King* (1933), 263 Mich 33. The cases which are cited by the majority in footnotes 8 and 10 do involve the situation where the attorney was acting in a special fiduciary relationship.

We have a contract dispute between two individuals. We are no longer dealing with the attorney and his client, or even the attorney and his client's administrator. The plaintiffs in this cause are successors in interest to the administrator of Mr. Begovich. The majority fails to state why this action should be treated differently from any other contract action. An attorney, merely because of his license to practice law, should not be treated differently from any other judgment debtor. His assets are clearly subject to attachment and execution, the same as any other judgment debtor. See GCR 1963, 741.1. If the plaintiffs had attempted to use attachment and execution, and for some reason this was not possible, then a question might arise as to whether GCR 1963, 908, was applicable. But, that is not the situation we are faced with here. The plaintiffs have made absolutely no attempt to use

the normal method of securing execution on a judgment.

Despite the assertions of the majority, defendant is being jailed for failure to pay a debt. The Michigan rule was well stated in *Carnahan* v. *Carnahan* (1906), 143 Mich 390, 396:

> "It has been the settled rule in this State that, where execution may issue to collect a decree for the payment of money, the proceeding by contempt to enforce a civil remedy cannot be resorted to. See *Haines* v. *Haines* [1876], 35 Mich 138; *North* v. *North* [1878], 39 Mich 67; *Swarthout* v. *Lucas* [1894], 102 Mich 492, 494."

At a time when both our Court and the United States Supreme Court have seriously limited the extent of courts to issue contempt citations, see *People* v. *Nowicki* (1971), 384 Mich 482, *People* v. *Matish* (1971), 384 Mich 568, and *Johnson* v. *Mississippi* (1971), 403 US 212 (91 S Ct 1778, 29 L Ed 2d 423), our Court is now opening up a whole new field for the use of the contempt powers. I would reverse the findings of contempt and allow the plaintiffs to proceed in the normal manner to enforce their judgment.

T. G. Kavanagh, J., concurred with Swainson, J.