*In re* JONES ESTATE

Docket No. 53556. Submitted October 19, 1981, at Detroit.—Decided April 23, 1982. Leave to appeal applied for.

Lynn V. Hooe, Jr., an attorney, was retained to provide legal representation to the estate of Issac Jones, deceased. Hooe petitioned the Oakland Probate Court for an order to settle a wrongful death claim, set attorney fees, determine loss to the spouse and next of kin of the deceased and to allow distribution of the proceeds of the settlement. The court, Eugene A. Moore, J., entered an order providing for the distribution of the proceeds of the settlement. Hearings were then held to determine whether the proceeds had been properly disbursed. The court ordered Hooe to pay the sum of $2,500 to the parents of the deceased on the basis of what the court found to be an error in Hooe's distribution of estate assets. The Oakland Circuit Court reviewed the matter and issued an opinion finding no abuse of discretion in the probate court proceedings, John N. O'Brien, J. Hooe appeals by leave granted the circuit court's affirmance of the probate court order. *Held:*

There was a breach of duty under the probate court's settlement order by an improper distribution which resulted in injury to Mattie Jones, the decedent's mother and administratrix of the estate, who did not receive the share she was awarded pursuant to the court's order. The probate court, relying on the probate court rules, found that justice required that Hooe pay Mattie Jones the amount of her injury. The probate court had jurisdiction to enter the order directing Hooe to pay the $2,500 amount to Mattie Jones, and did not err in doing so.

Affirmed.

1. APPEAL — FINDINGS OF FACT — EVIDENCE.

A trial court's findings of fact will be affirmed by the Court of Appeals where they go to the credibility of the witnesses and are consistent with the evidence.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 831, 884.
[2] 7 Am Jur 2d, Attorneys at Law § 245.

2. Courts — Circuit Courts — Probate Courts — Attorney Fees
   — Unjust Enrichment — Court Rules.

   Circuit courts and probate courts are granted jurisdiction by
   court rules to order an attorney to repay part of his attorney's
   retainer where the attorney was unjustly enriched as a result
   of events beyond his control; this jurisdiction also extends to
   situations in which an attorney has received from his client
   monies which duty requires him to repay (GCR 1963, 908; PCR
   908.4).

*Harold L. Curry,* for appellant.

*Keeling, Bogue & Huthwaite,* for appellee.

Before: T. M. Burns, P.J., and M. F. Cavanagh
and R. A. Benson,* JJ.

Per Curiam. Appellant appeals by leave of this
Court from the Oakland County Circuit Court's
order affirming the probate court order surcharg-
ing the appellant-attorney. The probate court or-
der required appellant to pay the sum of $2,500 to
appellees Wade and Mattie Jones, parents of the
deceased, Isaac Jones. The probate court order was
entered on the basis of what the probate court
found to be an error in the appellant's distribution
of estate assets. After an appeal of the probate
court order, the circuit court affirmed that order.

The rule invoked by the probate court to sur-
charge appellant-attorney was PCR 908.4, which
provides:

"Attorneys and counselors are officers of the courts of
this state and as such are subject to the summary
jurisdiction of such courts. The court has jurisdiction,
on complaint of any client, and after reasonable notice
and hearing, to make any order for the payment of
money or for the performance of any act by the attor-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ney which law and justice may require regarding matters arising in proceedings in such courts."

PCR 908.4 is similar to GCR 1963, 908.

The circuit court noted that "no allegation is made that appellant in any way mishandled the settlement proceeds to his personal benefit", but went on to state that an exercise of the court's "inherent power" may be disturbed "only upon a finding that there has been a clear abuse of discretion", and held that the circuit court would not "substitute its interpretation of what 'law and justice' required in this case for that adopted by the Probate Court after hearings and testimony on the matter".

Appellant explained his actions in distributing the estate assets, the proceeds of a settlement in an action for the wrongful death of the decedent, Isaac Jones, by claiming that he had not made any mistake but merely distributed the assets in accordance with an unwritten agreement entered into by the beneficiaries, Wade, Mattie, and June Jones. Appellees gave contrary testimony, which supported the conclusion that appellant made an error distributing the proceeds of the wrongful death settlement. The probate court found the testimony of the appellees more credible than that of the appellant. To the extent that the findings of the probate court as to the credibility of the witnesses are consistent with the evidence, this Court must affirm such findings on appeal. *Shields v Collins,* 83 Mich App 268; 268 NW2d 371 (1978), *lv den* 403 Mich 812 (1978). For purposes of laying the background of the instant action, we quote from the circuit court's concise statement of proceedings and facts:

"Isaac Jones died intestate on February 19, 1968 from

a shotgun wound sustained while a customer at a service station. Mrs. Mattie Jones, his mother, was appointed administratrix of his estate and commenced a wrongful death action in her representative capacity. A settlement was reached in that action, and a check was duly issued to administratrix Jones in the amount of $17,500 as complete satisfaction of the debt owed to the estate. This check was deposited in appellant's client trust account. Appellant subsequently issued check number 895 from that trust account to June Jones, in the amount of $7,600. In addition, check number 894 was issued from that account to Mattie B. Jones, in the amount of $4,900.

"Prior to the settlement of the wrongful death action, and in anticipation that the matter would be settled for $15,000, appellant moved for an order in the probate court to settle the claim, set attorney fees, determine loss to the spouse and next of kin and to allow distribution of the proceeds of the settlement. This order was entered on May 15, 1973. The order stated that June E. Jones (the spouse) was the spouse of the deceased and that Wade and Mattie Jones (the parents) were the next of kin of the deceased. The court ordered distribution of $5,000 as attorney fees and reimbursement, $5,000 to the spouse and $5,000 to the parents.

\* \* \*

"Appellant further stated that an increase in the settlement figure was achieved because counsel for plaintiff in the wrongful death action convinced defense counsel that June E. Jones should receive additional compensation for her loss. Appellant stated that the parties agreed that this increased settlement figure of $17,500 was to be divided as follows:

| | |
|---|---|
| "Attorney fees and reimbursement | $5,000 |
| "June E. Jones, spouse of deceased | $7,500 |
| "Wade and Mattie Jones, parents of deceased | $5,000 |

"Appellant further stated that a sale of real property from the estate of Isaac Jones to Wade and Mattie Jones was being effected at a time contemporaneous with the settlement of the wrongful death action. Appellant stated that the parties agreed that Mattie Jones

would pay June Jones $100.00 in exchange for release of the dower rights which June Jones had in the real property; that property being the marital home of the deceased and June E. Jones. Appellant stated that this purchase of dower rights was completed with funds allocated to Mattie Jones in the agreement between the parties. The result of this purchase was that the disbursement to June E. Jones, spouse of deceased, was increased by $100.00, to a total of $7,600; while the disbursement to Wade and Mattie Jones, parents of deceased, was decreased $100.00 to a total of $4,900. Appellant stated that checks were issued to the parties in these respective amounts.

"The testimony of Mattie Jones differed from appellant's regarding the allocation of the proceeds of the wrongful death action that had resulted in the issuance of checks numbered 894 and 895 to the appellees herein. She testified that counsel for the estate had informed appellees that the funds were to be distributed as follows:

| "Attorney fees and reimbursement | $ 5,000 |
| "June E. Jones, spouse of deceased | $10,000 |
| "Wade Jones, father of deceased | $ 2,500 |
| "Mattie Jones, mother of deceased | $   –0– |

"Mattie Jones further testified that she inquired whether June Jones could repay an existing personal debt, owed to Mattie Jones from the proceeds of the settlement. Mattie Jones further stated that this repayment was approved. The sum of $2,400 was thus deducted from the amount to be disbursed to June Jones, and added to the amount to be disbursed to Mattie Jones. She testified that this resulted in the disbursement amount to June Jones of $7,600 and the disbursement amount paid to Wade and Mattie Jones of $4,900.

"Mattie Jones stated that check number 894, issued to Mattie Jones, was comprised of $2,500 paid to Wade Jones pursuant to the court order of disbursement entered May 15, 1973, and $2,400 paid to Mattie Jones from the amount originally to be disbursed to June Jones. This latter amount representing repayment of an independent debt, and not payment pursuant to the order of disbursement entered May 15, 1973.

"June E. Jones testified at the hearings and her testimony corroborated that of Mattie Jones. Both June and Mattie Jones denied any pay arrangement involving release of June Jones' dower rights in her former marital home.

"The probate court found that $2,400 had been subtracted from the disbursement given to June E. Jones and that this sum was added to the disbursement given to the parents. The court found that the transfer represented payment to the parents for an independent debt owed to them by the spouse. The court, therefore, found that the $4,900 check issued to the parents was comprised of $2,500 to Wade Jones, pursuant to the probate court order of disbursement and $2,400 requested by the spouse to be paid to Mattie Jones from the spouse's disbursement. The probate court found that the check issued to the parents did not include $2,500 ordered to be given to Mattie Jones in the probate court order of disbursement. The court decided on April 19, 1978, to [invoke] PCR 1972, 908.4 and ordered appellant to pay over this amount to the parents."

The question before this Court is whether the probate court had jurisdiction under PCR 908.4 to enter an order directing the appellant-attorney to pay money to appellee Mattie Jones. Appellant contends that the purpose of the court rule is to protect clients from overreaching, self-dealing or unjust enrichment on the part of an attorney, and that the rule should not be applied in a case such as the present one, where the probate court at most found negligence on the part of the attorney and found no unjust enrichment. Appellant draws this Court's attention to the cases of *Maljak v Murphy,* 385 Mich 210; 188 NW2d 539 (1971), where an attorney received a large fee immediately prior to the suicide of his client, a defendant in a murder trial, where the court found unjust enrichment and found valid an order directing the attorney to return part of the fee, *Haskins v Bell,*

373 Mich 389; 129 NW2d 390 (1964), where the Court found that an attorney had retained award checks of clients in a fee dispute for a number of years and deemed the practice "inexcusable conduct", and *Merrill v Grant,* 344 Mich 1; 73 NW2d 254 (1955), where the Court found an attorney liable where that attorney made use of knowledge of the client's affairs to take advantage of the client in subsequent transactions. Appellant quotes from the Court's opinion in *Maljak, supra:*

"GCR 1963, 908 was first adopted in the revision of 1931 as Rule 4. It was originally enacted as being, in substance, '* * * a recognition of the common law right of the courts to exercise control over attorneys in their capacity as officers of the court.' Since the common-law procedure was exercised only in cases of professional misconduct, the rule has been '* * * deemed to cover only situations of overreaching on the part of an attorney as against his client * * *.' " *Maljak v Murphy,* 385 Mich 210, 216.

We reject appellant's reliance on the Court's statement in *Maljak, supra,* that GCR 1963, 908 "covers only situations of overreaching" because that statement in *Maljak* was dicta. There the attorney was not guilty of any intentional misconduct and the Court was not called upon to address the issue whether GCR 1963, 908 applies where intentional misconduct is lacking. Instead, the Court in *Maljak* found that a lower court has jurisdiction under the rule to order repayment of part of an attorney's retainer where the attorney was unjustly enriched as a result of events beyond his control (the suicide of his client shortly after the client had given him a large advance on his retainer). The Court found that GCR 1963, 908 applied and stated that jurisdiction under the rule "extends to [situations] in which an attorney has

received from his client monies which duty requires him to repay", *Maljak, supra,* 216.

We concur in appellees' reliance on the commentary to GCR 1963, 908 in 6 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 323, where the commentators observe:

"The Rule, as written, is very broad and could, conceivably, be interpreted to cover all matters arising out of dealings between an attorney and his client. If that were true, it could be invoked, for example, in a case involving a dispute between an attorney and his client as to the reasonableness of a fee for services; *or, for instance, in the case of a claim by a client of negligence on the part of an attorney, such as might be involved in the rendition of an erroneous title opinion.*

"This Rule cannot apparently be invoked upon petition of the attorney, but rather must be instituted by the client. *It is intended as a relief measure to summarily grant justice to the client.*

"It would seem, also, *that this Rule is directed to the taking of such action as is necessary for the client's protection rather than to the disciplining of the attorney* who commits a breach of his professional conduct. Disciplinary action is provided under the Supreme Court rules dealing with the State Bar of Michigan through the procedure of grievance committees and disbarment proceedings." (Emphasis added.)

Appellant attorney in the instant case was entrusted with the entire amount of a wrongful death settlement. He had the duty to properly distribute that settlement to the various claimants in accordance with the court's actual settlement order. We note that the problems which arose here may have been avoided if the appellant-attorney had obtained from the court a fully amended settlement order which set forth the new amount ($17,500) to be disbursed and the manner in which it was to be disbursed.

There was a breach of duty under the court's settlement order by an improper distribution which resulted in injury to the attorney's client, Mattie Jones, who did not receive the share she was awarded pursuant to the order. The probate court found that under PCR 908.3, "justice requires" that appellant-attorney pay Mattie Jones the amount of her injury. We affirm the order of the probate court and the affirmance of the circuit court.

Affirmed. Costs to appellees.