**In re PINELOCH ENTERPRISES, INC., Debtor.**

**Bankruptcy No. 95–04634–8–ATS.**

United States Bankruptcy Court,
E.D. North Carolina,
Raleigh Division.

March 1, 1996.

Trawick H. Stubbs, Jr., Stubbs, Perdue, Alexander & Ayers, New Bern, NC, for debtor.

John Rhyne, Bankruptcy Attorney, Bankruptcy Admin. Office, Wilson, NC.

## ORDER APPROVING FEE

A. THOMAS SMALL, Chief Judge.

The matter before the court is the application to employ Trawick H. Stubbs, Jr. as counsel for the chapter 11 debtor in possession, Pineloch Enterprises, Inc. The Bankruptcy Administrator filed an objection and a

hearing was held by conference telephone call on February 12, 1995.

Pineloch filed a petition for chapter 11 relief on December 13, 1995, and applied to employ Mr. Stubbs and his law firm as counsel to the debtor in possession. Pineloch is a corporation wholly owned by James J. Pence III that operates a retail and wholesale hardware and auto parts business in Wagram, North Carolina. The debtor's schedules show assets of only $107,716.51 and liabilities of $430,365.21. Gross sales for 1995 were approximately $160,000.

The debtor would qualify as a small business as defined in 11 U.S.C. § 101(51C), but the debtor did not make that election. Nevertheless, this case is on a fasttrack, as are most chapter 11 cases of this size in this district. On December 19, 1995, an order was entered directing the debtor to file a plan and disclosure statement on or before March 11, 1996. A status conference was held on January 5, 1996, by conference telephone call, and an order was entered that same day finalizing the date of March 11, 1996, as the date by which the plan and disclosure statement must be filed. The orders of December 19, 1995, and January 5, 1996, provided that the disclosure statement, if acceptable to the court, would be conditionally approved and that the disclosure statement hearing and the confirmation hearing would be combined.

The debtor's counsel has requested approval of a flat fee of $5,000 and has asked that his law firm be allowed to place the fee in its operating account rather than holding the fee in trust. This request presents two issues: (1) Are flat fees appropriate in chapter 11 cases? (2) When may counsel who has been allowed a flat fee take that fee from the firm's trust account?

*Flat Fees in Chapter 11 Cases*

In regard to professional fees, § 330(a)(3) of the Bankruptcy Code provides:

(3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

■ The general rule in the Fourth Circuit is that compensation for counsel to the debtor in possession is based on the lodestar analysis in which the court applies a number of factors to determine a reasonable hourly rate and an appropriate number of hours for the services performed. *Harman v. Levin,* 772 F.2d 1150 (4th Cir.1985); *Barber v. Kimbrell's, Inc.,* 577 F.2d 216 (4th Cir.), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 *In re Watson Seafood & Poultry Co., Inc.,* 40 B.R. 436 (Bankr.E.D.N.C. 1984). The court in *Barber* held that when fixing a fee award, the court must consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).[1]

---

1. The *Johnson* factors cited in *Barber* are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

■ However, the Fourth Circuit Court of Appeals has recognized that a simple time/hourly rate calculation is not the only method for ascertaining a reasonable fee. *See, Harman* at 1153–54. In routine chapter 13 cases, for example, the court need not always require counsel to itemize the hours expended on the debtor's behalf. The Fourth Circuit concluded that "[c]hapter 13 bankruptcy cases often involve a number of relatively routine questions with which regular practitioners quickly become familiar, so they represent the type of cases where a court may well utilize factors in addition to the time reasonably expended and a reasonable hourly rate." *Harman* at 1153–54.

■ Flat fees are customary in chapter 13 cases in this district and are not uncommon in cases under chapter 12. When determining the reasonableness of a flat fee in cases under chapters 12 and 13, the court considers most of the same *Johnson* factors it uses to arrive at a reasonable hourly rate under the "lodestar," as well as the factors provided in § 330(a)(3) and § 330(a)(4)(B).[2] The most important factor is what other attorneys charge for similar cases. Additionally, the court looks at the attorney's anticipated time commitment, the novelty and difficulty of the questions raised, the skill required to properly perform the legal services rendered, the attorney's customary fee, the amount involved, and the experience, reputation and ability of the attorney.

Flat fees work in chapter 13 cases because most chapter 13 cases are routine and the services required are predictable. The court approves thousands of chapter 13 fee requests each year and can easily gauge the value of an attorney's services in most chapter 13 cases.

■ Small business chapter 11 cases generally are more complicated that those in chapter 13, but not to the degree that would inhibit the use of flat fees. This is especially true in the Eastern District of North Carolina where small business chapter 11 cases

are put on a fasttrack, the hearings on confirmation and the disclosure statement are combined, and stay litigation is minimal because secured creditors know that the fate of the debtor will be determined early in the case. *See,* A. Thomas Small, *Small Business Bankruptcy Cases,* 1 AM.BANKR.L.REV. 305 (Winter 1993).

Flat fees can be very beneficial to a small business chapter 11 case for several reasons. First, a flat fee allows the debtor to accurately predict its administrative costs. Additionally, a flat fee provides the debtor's counsel with an incentive to expedite the reorganization. A flat fee is also advantageous to the debtor's attorney because the attorney need not wait until the end of the case to have the compensation approved, and the attorney is not required to file detailed time records.

■ There is no reason why the court cannot establish the amount of the flat fee at the beginning of the case after notice has been given to all creditors pursuant to § 330(a)(1) and Federal Rule of Bankruptcy Procedure 2002(a)(7), 2002(c)(2), and 2016(a). If the flat fee is later determined to be "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions," the fee can be adjusted. 11 U.S.C. § 328(a). If the flat fee exceeds the reasonable value of services, the court can require the attorney to return the fee to the extent that it is excessive pursuant to § 329(b). Certainly, if the attorney does not properly represent the debtor after approval of the flat fee, the approved fee would not be reasonable under § 330(a)(3) and adjustments can be made.

■ This case is a relatively uncomplicated small business chapter 11 reorganization and a flat fee of $5,000 is consistent with, or less than, what would be anticipated in similar chapter 11 cases. Counsel is an experienced chapter 11 practitioner who has successfully represented chapter 11 debtors in

**2.** 11 U.S.C. § 330(a)(4)(B) provides: In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with

the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

this court since the inception of chapter 11 in 1979.

## Must the Flat Fee Be Held in Trust?

■ The debtor paid the $5,000 to the attorney prior to filing the bankruptcy petition and the remaining issue is whether that fee must be held in the attorney's trust account prior to court approval. The answer is that it must be held in the attorney's trust account until it is approved by the court and it is earned by counsel.

Although there is authority to the contrary, the majority rule in bankruptcy is that *all* retainers, whether general retainers, flat fee retainers, advance fee nonrefundable retainers, or advance fee security retainers, must be held in trust pending court approval. *In re NBI, Inc.,* 129 B.R. 212 (Bankr.D.Colo. 1991) (prepetition "earned" retainers are unreasonable in bankruptcy as they nullify Code protections, therefore such retainers remain property of the estate required to be held in trust by counsel and may be drawn against only with court approval); *In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569, 575 (Bankr.N.D.Tex.1986) (terms of retainer are determined by statute and court's discretion regardless of agreement of counsel and client); *In re Hathaway Ranch Partnership,* 116 B.R. 208 (Bankr.C.D.Cal.1990) ($50,000 "earned in full" retainer was advance fee retainer and had to be kept in trust); *Matter of Independent Sales Corp.,* 73 B.R. 772, 774–775 (Bankr.S.D.Iowa 1987) (prepetition general retainers must be held in trust to extent they are for services during pendency of case); *In re Doors and More, Inc.,* 127 B.R. 1001 (Bankr.E.D.Mich.1991) (where $4,000 retainer was not held in trust, all fees were denied); *contra, In re McDonald Brothers Construction, Inc.,* 114 B.R. 989 (Bankr. N.D.Ill.1990).

Consequently, a flat fee received by counsel prior to bankruptcy must be held in the attorney's trust account until the fee is approved by the court. Furthermore, even after court approval, the flat fee retainer must remain in the trust account until it is earned.

## When Is a Flat Fee Retainer Earned?

Undoubtedly, part of a flat fee is earned when a bankruptcy petition is filed. Counsel has advised the debtor and prepared the petition and the schedules. However, counsel has not earned the entire flat fee for filing the petition because there is more to be done.

■ Although this schedule is somewhat arbitrary, in this case the court will allow one third of the flat fee to be earned when counsel attends the meeting of creditors, one third when the plan and disclosure statement are filed and the disclosure statement conditionally approved, and one third when the plan is confirmed. If the plan is not confirmed, counsel may apply for the balance any time after the confirmation hearing.

Flat fees in small business cases are a good idea and should be encouraged. The use of flat fees in small business cases, however, is relatively new and will no doubt develop as the court and bar have more experience with the practice.

Accordingly, the flat fee of $5,000 is **APPROVED** subject to notice to all creditors, and the flat fee retainer must be held in trust subject to withdrawal in accordance with the schedule described in this order.

**SO ORDERED.**